UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| LENORE BURNLEY, et al., | |
| *Plaintiffs*, | |
| v. | Case No. 1:26-cv-10364-LTS |
| UNITED STATES OF AMERICA, | |
| *Defendant*. | |

UNITED STATES' MEMORANDUM IN SUPPORT
OF ITS MOTION TO DISMISS THE COMPLAINT

**TABLE OF CONTENTS**

I.   INTRODUCTION ........................................................................................................... 1

II.   BACKGROUND ............................................................................................................ 2

III.   LEGAL STANDARD .................................................................................................... 3

IV.   ARGUMENT ................................................................................................................. 4

   A.  Venue Is Improper in This and Any Other Judicial District, Compelling Dismissal. ......... 5

     1.  Venue Is Improper Under the Plain Text of the SAA. ...................................................... 6

     2.  Legislative History, Amendments, and the Statutory Scheme Demonstrate that Congress's Venue Choices in the SAA Were Deliberate. ....................................................... 7

     3.  Courts Faithfully Adhere to What Congress Said. ........................................................... 10

     4.  Plaintiffs' Cited Cases Do Not Overcome the Weight of Authority. ............................... 11

     5.  Dismissal Rather than Transfer Is Appropriate. .............................................................. 17

   B.  Plaintiffs' DOHSA Claim Should Be Dismissed for Lack of Statutory Standing. ........... 20

     1.  Plaintiffs Lack Standing to Bring a DOHSA Action. ..................................................... 20

     2.  Plaintiffs' Lack of Statutory Standing Imbues the Complaint with a Jurisdictional Defect. ......................................................................................................................... 22

   C.  Plaintiffs' ATS Claim Must Be Dismissed Because It Is Displaced by DOHSA, and, Even If It Were Not, the Court Should Not Imply a Private Right of Action Under the ATS ............ 24

     1.  Because DOHSA Provides the Exclusive Remedy for Wrongful Deaths on the High Seas, Plaintiffs' ATS Claims Are Displaced. ......................................................................... 24

     2.  The Court Should Decline to Create a New ATS Cause of Action. ................................. 28

V.   CONCLUSION ............................................................................................................ 33

# TABLE OF AUTHORITIES

**Cases:**                                                              **Page(s)**

*Abbott v. United States*,
   61 F. Supp. 989 (S.D.N.Y. 1945) ................................................................... 11

*Alcabasa v. Korean Air Lines, Co.*,
   62 F.3d 404 (D.C. Cir. 1995) ................................................................... 20, 21

*Argonaut Navigation Co. v. United States*,
   142 F. Supp. 489 (S.D.N.Y. 1956) ................................................................. 19

*Ashcroft v. Iqbal*,
   556 U.S. 662 (2009) ...................................................................................... 4

*Atl. Marine Constr. Co. v. U.S. Dist. Ct. for W. Dist. of Tex.*,
   571 U.S. 49 (2013) ................................................................................... 6, 18

*Jesner v. Arab Bank, PLC*,
   584 U.S. 241 (2018) ............................................................... 29, 30, 31, 32

*Barnes v. United States*,
   67 F. Supp. 571 (S.D.N.Y. 1946) ..................................................... 11, 14, 15

*Barnhart v. Sigmon Coal Co.*,
   534 U.S. 438 (2002) ..................................................................................... 10

*Barnhart v. Thomas*,
   540 U.S. 20 (2003) ........................................................................................ 6

*Bivens v. Six Unknown Named Agents of Federal Bureau of Narcotics*,
   403 U.S. 388 (1971) ..................................................................................... 30

*Blanco v. United States*,
   464 F. Supp. 927 (S.D.N.Y. 1979) ................................................................ 20

*Boozer v. Bell Textron, Inc.*,
   2026 WL 945706 (E.D. Pa. Apr. 7, 2026) ..................................................... 25

*Bostock v. Clayton County*,
   590 U.S. 644 (2020) ................................................................................. 17, 19

*Bowoto v. Chevron Corp.*,
   557 F. Supp. 2d 1080 (N.D. Cal. 2008) ................................................... 27, 28

*Bowoto v. Chevron Corp.*,
   621 F.3d 1116 (9th Cir. 2010) ............................................................ 26, 27, 28

*Briggs v. Walker*,
   171 U.S. 466 (1898) ...................................................................................... 20

*Brownback v. King*,
   592 U.S. 209 (2021) ...................................................................................... 23

*Brunette Mach. Works, Ltd. v. Kockum Indus., Inc.*,
   406 U.S. 706 (1972) ...................................................................................... 17

*Carroll v. United States*,
   133 F.2d 690 (2d Cir. 1943) ...................................................................... 10-11

*Cebollero-Bertran v. Puerto Rico Aqueduct & Sewer Auth.*,
   4 F.4th 63 (1st Cir. 2021) ................................................................................ 4

*Clemente Props., Inc. v. Pierluisi-Urrutia*,
   165 F.4th 1 (1st Cir. 2026) ......................................................................... 3, 19

*Credle v. United States*,
   904 F. Supp. 2d 527 (D. Md. 2012) .............................................................. 20

*Cruz v. Korean Air Lines Co.*,
   838 F. Supp. 843 (S.D.N.Y. 1993) ................................................................ 21

*Culbertson v. Berryhill*,
   586 U.S. 53 (2019) ........................................................................................... 7

*Dept. of Agric. Rural Dev. Rural Hous. Serv. v. Kirtz*,
   601 U.S. 42 (2024) ........................................................................................ 24

*Dooley v. Korean Air Lines, Co.*,
   524 U.S. 116 (1998) ................................................................................. 20, 25

*E. Transp. Co. v. United States*,
   272 U.S. 675 (1927) ...................................................................................... 10

*Erie R.R. Co. v. Tompkins*,
   304 U.S. 64 (1938) ........................................................................................ 29

*F.D.I.C. v. Meyer*,
   510 U.S. 471 (1994) ................................................................................. 23, 24

*Foisie v. Worcester Polytechnic Inst.*,
   967 F.3d 27 (1st Cir. 2020) ........................................................................... 22

*Frank & Hirsch Distrib. Co. v. United States*,
   76 F. Supp. 501 (S.D.N.Y. 1947) .................................................................. 11

*Futch v. Midland Enters., Inc.*,

471 F.2d 1195 (5th Cir. 1973) ................................................................................. 21

*Goldey v. Fields*,
606 U.S. 942 (2025) ............................................................................................. 30

*Haesen v. United States*,
66 F. Supp. 759 (E.D.N.Y. 1946) ................................................................... 11, 14

*Harrington v. United States*,
748 F. Supp. 919 (D.P.R. 1990) ............................................................................. 9

*Hassanati v. Int'l Lease Fin. Corp.*,
738 Fed. Appx. 443 (9th Cir. 2018) ..................................................................... 21

*Helman v. Alcoa Global Fasteners, Inc.*,
843 F. Supp. 2d 1038 (C.D. Cal. 2011) ........................................................... 21, 22

*Henderson v. United States*,
517 U.S. 654 (1996) ............................................................................................. 18

*Henry Schein, Inc. v. Archer & White Sales, Inc.*,
586 U.S. 63 (2019) ............................................................................................... 14

*Henson v. Santander Consumer USA, Inc.*,
582 U.S. 79 (2017) ................................................................................................. 6

*Hernandez v. Mesa*,
589 U.S. 93 (2020) ............................................................................................... 32

*Hoiness v. United States*,
335 U.S. 297 (1948) ......................................................................................... 15, 19

*In re James T. Anderson*,
847 F. Supp. 2d 1263 (W.D. Wash. 2012) ............................................................ 21

*In re Lion Air Flight JT 610 Crash*,
110 F.4th 1007 (7th Cir. 2024) ............................................................................. 25

*Jacobs v. N. King Shipping Co.*,
180 F.3d 713 (5th Cir. 1999) ............................................................................... 25

*Kasprik v. United States*,
87 F.3d 462 (11th Cir. 1996) ................................................................................. 3

*Katz v. Pershing, LLC*,
672 F.3d 64 (1st Cir. 2012) ............................................................................. 21, 22

*Kiobel v. Royal Dutch Petroleum Co.*,
569 U.S. 108 (2013) ......................................................................................... 29, 32

*Kole v. Korean Air Lines Co.*,
  1996 WL 436514 (9th Cir. 1996) ...................................................................... 21

*Krick v. Raytheon Co.*,
  695 F. Supp. 3d 202 (D. Mass. 2023) ............................................................ 4, 18

*Krick v. Raytheon Co,*
  2026 WL 607395 (E.D.N.Y. Mar. 2, 2026) ........................................................ 21

*Kulukundis v. United States*,
  132 Ct. Cl. 644 (Ct. Cl. 1955) ............................................................... 12, 15, 16

*Lamie v. United States Trustee*,
  540 U.S. 526 (2004) ............................................................................................ 16

*Lane v. Pena*,
  518 U.S. 187 (1996) ............................................................................................ 24

*Lexmark Int'l, Inc. v. Static Control Components, Inc.*,
  572 U.S. 118 (2014) ............................................................................................ 21

*Lorillard v. Pons*,
  434 U.S. 575 (1978) ............................................................................................ 11

*Maine Cmty. Health Options v. United States*,
  590 U.S. 296 (2020) .............................................................................................. 6

*Malajalian v. United States*,
  504 F.2d 842 (1st Cir. 1974) ......................................................................... 11, 12

*Manuel v. United States*,
  50 F.3d 1253 (4th Cir. 1995) ............................................................................... 3

*Matal v. Tam*,
  582 U.S. 218 (2017) .............................................................................................. 7

*McGhee v. United States*,
  154 F.2d 101 (2d Cir. 1946) ......................................................................... 12, 13

*Merchia v. Va. Bd. of Med.*,
  2019 WL 7567831 (D. Mass. Apr. 2, 2019) ........................................................ 19

*Metaxas v. United States*,
  68 F. Supp. 667 (S.D. Cal. 1946) ........................................................... 12, 15, 16

*Middleton & Co. v. United States*,
  273 F. 199 (E.D.S.C. 1921) ................................................................................ 12, 16

*Miles v. Apex Marine Corp.*,

498 U.S. 19 (1990) ................................................................................................. 7, 8

*Missouri Pac. R. Co. v. Ault*,
256 U.S. 554 (1921) ................................................................................................. 3

*United States v. Mitchell*,
445 U.S. 535 (1980) ................................................................................................. 24

*Mobil Oil Corp. v. Higginbotham*,
436 U.S. 618 (1978) ...................................................................................... 25, 26, 27

*Mowrer v. United States Dep't of Transp.*,
14 F.4th 723 (D.C. Cir. 2021) .................................................................................. 3

*Nasrallah v. Barr*,
590 U.S. 573 (2020) ................................................................................................. 17

*Nestlé USA, Inc. v. Doe*,
593 U.S. 628 (2021) ................................................................................ 29, 30, 31, 32

*Offshore Logistics, Inc. v. Tallentire*,
477 U.S. 207 (1986) ................................................................................................. 25

*O'Connell v. Interocean Mgmt. Corp.*,
90 F.3d 82 (3d Cir. 1996) ........................................................................................ 3

*Patel v. Garland*,
596 U.S. 328 (2022) ................................................................................................. 14

*Pistor v. Garcia*,
791 F.3d 1104 (9th Cir. 2015) ................................................................................. 3

*Port Auth. Trans-Hudson Corp.*,
495 U.S. 299 (1990) ............................................................................................. 18-19

*Quintero Perez v. United States*,
8 F.4th 1095 (9th Cir. 2021) .................................................................................... 24

*Rollins v. Peterson Builders, Inc.*,
761 F. Supp. 943 (D.R.I. 1991) ............................................................................... 3

*Rubin v. Islamic Republic of Iran*,
583 U.S. 202 (2018) ................................................................................................. 10

*Rux v. Republic of Sudan*,
495 F. Supp. 2d 541 (E.D. Va. 2007) ...................................................................... 26

*SAA in Nahmeh v. United States*,
267 U.S. 122 (1925) ................................................................................................. 10

*Saint John Marine Co. v. United States*,
　1994 WL 281937 (S.D.N.Y. June 22, 1994) ........................................................ 14

*Sarvis v. Polyvore, Inc.*,
　2013 WL 4056208 (D. Mass. 2013) ................................................................... 22

*Sawyer v. United States*,
　66 F. Supp. 271 (S.D.N.Y. 1946) ...................................................................... 11

*Smith v. Spizzirri*,
　601 U.S. 472 (2024) ............................................................................................. 6

*Sosa v. Alvarez-Machain*,
　542 U.S. 692 (2004) ................................................................................ 28, 29, 30

*Steer v. Charles Stark Draper Lab., Inc.*,
　 2026 WL 444637 (D. Mass. Feb. 17, 2026) ................................................ 21, 22

*Succar v. Ashcroft*,
　394 F.3d 8 (1st Cir. 2005) ................................................................................... 7

*The Elmac,*
　285 F. 665 (S.D.N.Y. 1922) .............................................................................. 12

*United States v. Catala*,
　870 F.3d 6 (1st Cir. 2017) ................................................................................. 20

*United States v. Mitchell*,
　463 U.S. 206 (1983) .......................................................................................... 22

*United States v. Roberson*,
　459 F.3d 39 (1st Cir. 2006) ................................................................................. 7

*United States v. United Cont'l Tuna Corp.*,
　425 U.S. 164 (1976) ......................................................................................... 7, 9

*United States v. Vidal-Reyes*,
　562 F.3d 43 (1st Cir. 2009) ................................................................................. 6

*Virginia Uranium, Inc. v. Warren*,
　587 U.S. 761 (2019) .................................................................................... 10, 17

*W.E. Rippon & Son v. United States*,
　1963 WL 106274 (S.D.N.Y. Sept. 12, 1963) .................................................... 9

*Waterman S.S. Corp. v. United States*,
　2007 WL 9775504 (W.D. Wash. Apr. 5, 2007) ................................................ 6

*Yamaha Motor Corp. v. Calhoun,*

viii

516 U.S. 199 (1996) ............................................................................................ 25, 26

*Ysleta Del Sur Pueblo v. Texas*,
    596 U.S. 685 (2022) ....................................................................................... 10

*Ziglar v. Abbasi*,
    582 U.S. 120 (2017) .................................................................................. 29, 30

## Statutes and Constitutions:

U.S. Const. art I, § 8, cl. 10 ................................................................................ 31

28 U.S.C. § 1350 ............................................................................................ 24, 32

28 U.S.C. § 1390 ................................................................................................. 18

28 U.S.C. § 1391 ................................................................................................. 18

28 U.S.C. § 1406 ................................................................................................... 5

28 U.S.C. § 2676 ................................................................................................. 23

46 U.S.C. § 30302 .............................................................................. 2, 3, 20, 25

46 U.S.C. § 30303 ............................................................................................ 3, 31

46 U.S.C. § 30903 ............................................................................................ 23, 24

46 U.S.C. § 30904 ................................................................................................. 25

46 U.S.C. § 30905 ................................................................................................. 22

46 U.S.C. § 30906 ...................................................................................... 2, 5, 6, 18

46 U.S.C. § 31104 ................................................................................................... 9

46 U.S.C. § 31111 ................................................................................................... 9

46 U.S.C. §§ 30302, 30903 ................................................................................ 31

50 U.S.C. § 1291 ................................................................................................. 13

50 U.S.C. §§ 4701–05 ......................................................................................... 13

## Rules:

Fed. R. Civ. P. 8 ................................................................................................... 4

Fed. R. Civ. P. 12 ........................................................................................................................... 1

**Other Authorities:**

*1907 Admiralty R. of Practice*,
  210 U.S. 544 (1907) ............................................................................................................ 7

x

The United States respectfully submits this Memorandum in Support of its Motion to Dismiss.  Fed. R. Civ. P. 12(b)(1), 12(b)(3), 12(b)(6).

I.      INTRODUCTION

Plaintiffs are the mother and sister of two men from Trinidad and Tobago whom they allege were killed by the U.S. military in international waters when a missile struck their boat. Doc. No. 1.  Plaintiffs allege this air strike was part of the United States' counter-narcotics campaign known as Operation Southern Spear, *see id.*, which, among other things, targets vessels engaged in drug smuggling by international cartels that the United States has designated as Foreign Terrorist Organizations and Specially Designated Global Terrorists.[1]  The Complaint must be dismissed at the threshold because, among other reasons, Plaintiffs filed it in an improper venue by persons who lack standing to bring it, and as a result the United States has not waived sovereign immunity as to Plaintiffs' claims.

In seeking punitive and compensatory damages and in "demand[ing] accountability" for U.S. actions, *see id.* at 12, Plaintiffs urge the Court to wade into a thicket of sensitive and complex political, diplomatic, and military issues that are constitutionally vested in the political branches alone.  The questions Plaintiffs ask this Court to resolve would adversely affect U.S. foreign relations and military operations and, in all events, could implicate the state secrets privilege.

Although Plaintiffs seek to draw the Court into this morass, various preliminary defects in their Complaint require dismissal.  For one, venue does not lie in the District of Massachusetts—or anywhere else in the United States for that matter.  Plaintiffs also have not

---

[1] *See* Off. of Inspector General, U.S. Dept. of War, Lead Inspector General Report to the United States Congress, Operation Southern Spear (May 21, 2026) at 2.

obtained letters of appointment, which are necessary to have standing to sue under the relevant statute. These issues demand resolution at the threshold. Plaintiffs invoke the Suits in Admiralty Act of 1920 ("SAA"), which is a limited waiver of sovereign immunity permitting parties to bring suit only in the federal district where they reside or where a vessel charged with liability is located. *See* 46 U.S.C. § 30906(a). But Plaintiffs are not residents of any federal district in the United States, and no vessel is charged with liability, so there is no proper venue under the statute on which Plaintiffs rely to waive sovereign immunity. Moreover, Plaintiffs' first count under the Death on the High Seas Act of 1920 ("DOHSA") must be dismissed because such claims can be brought only by personal representatives of the decedents' estates. *See* 46 U.S.C. § 30302. Plaintiffs do not claim to be personal representatives of the estates but instead assert that they "anticipate[]" obtaining that status at some point in the future. Plaintiffs fail even to plead that they have statutory standing to bring this DOHSA claim. Doc. No. 1 ¶ 17.

Besides DOHSA, Plaintiffs' only other count seeks relief under the Alien Tort Statute of 1789 ("ATS"). This count also must be dismissed at the threshold because it is displaced by DOHSA, which provides the exclusive remedy for wrongful death claims on the high seas. The ATS count also fails because Plaintiffs have no viable implied right of action under the ATS pursuant to binding Supreme Court precedent.

II.    <u>BACKGROUND</u>

Plaintiffs allege that Chad Joseph and Rishi Samaroo—two Trinidadian nationals—were killed in international waters by a U.S. missile strike against their boat on October 14, 2025. *See* Doc. No. 1 ¶¶ 1, 12, 13, 25. Plaintiff Lenore Burnley alleges she is a citizen of Trinidad and Tobago and the mother of Chad Joseph. *Id.* ¶ 17. She further alleges that, although she is not the personal representative of Mr. Joseph, the "family has decided" that she "will represent Mr.

2

Joseph's estate" and that an attorney in Trinidad has been retained to seek her appointment as personal representative. *Id.* Similarly, Plaintiff Sallycar Korasingh alleges that she is a citizen of Trinidad and Tobago and the sister of Rishi Samaroo. *Id.* ¶ 18. While she is not currently the personal representative of Mr. Samaroo, Mr. Samaroo's family allegedly has decided she will represent the estate and has retained counsel to obtain appointment. *Id.*

Plaintiffs bring claims under DOHSA and the ATS to recover pecuniary, compensatory, and punitive damages against the United States. *See* Doc. No. 1 ¶¶ 71–87.[2]

III.    LEGAL STANDARD

The United States moves to dismiss Plaintiffs' DOHSA count under Rule 12(b)(1) because the United States has not waived sovereign immunity. "[T]he appropriate pleading in which to raise a sovereign immunity defense is a motion to dismiss under Rule 12(b)(1) for lack of subject matter jurisdiction." *Clemente Props., Inc. v. Pierluisi-Urrutia*, 165 F.4th 1, 11 n.3 (1st Cir. 2026). Whether characterized as jurisdictional or quasi-jurisdictional, "Rule 12(b)(1) is still a proper vehicle for invoking sovereign immunity from suit." *Pistor v. Garcia*, 791 F.3d 1104, 1111 (9th Cir. 2015).[3] When making a facial challenge to the Court's jurisdiction, as here, the "analysis is essentially the same as a Rule 12(b)(6) analysis," requiring the Court to accept

---

[2] Punitive damages are not available against the United States unless Congress specifically gives its consent to such damages being available. *See Missouri Pac. R. Co. v. Ault*, 256 U.S. 554, 564-65 (1921); *Kasprik v. United States*, 87 F.3d 462, 465-66 (11th Cir. 1996). Congress has not done so in admiralty actions, *see, e.g.*, *O'Connell v. Interocean Mgmt. Corp.*, 90 F.3d 82, 85 (3d Cir. 1996); *Kasprik*, 87 F.3d at 465–66; *Manuel v. United States*, 50 F.3d 1253, 1254 (4th Cir. 1995), nor are punitive damages available against any party in DOHSA claims. *See* 46 U.S.C. § 30303 (only pecuniary loss is available under DOHSA); *Rollins v. Peterson Builders, Inc.*, 761 F. Supp. 943, 948 (D.R.I. 1991).

[3] *See Mowrer v. United States Dep't of Transp.*, 14 F.4th 723, 735–36 (D.C. Cir. 2021) (Katsas, J. concurring) (reviewing caselaw considering federal sovereign immunity as a "less than pure jurisdictional question" because Congress can waive it, but still like other "waivable but jurisdictional questions:  Eleventh Amendment immunity . . . and personal jurisdiction." (citation modified)).

"well-pleaded facts" as true and ask whether Plaintiffs have "stated a plausible claim that the court has subject matter jurisdiction." *See Cebollero-Bertran v. Puerto Rico Aqueduct & Sewer Auth.*, 4 F.4th 63, 69 (1st Cir. 2021).

The United States also seeks to dismiss the Complaint under Rule 12(b)(3) because venue is improper in the District of Massachusetts and improper in any other district in the United States. Under Rule 12(b)(3), "a court may only authorize dismissal when a venue is 'wrong' or 'improper' in the forum in which it was brought." *Krick v. Raytheon Co.*, 695 F. Supp. 3d 202, 209 (D. Mass. 2023) (quoting *Atl. Marine Constr. Co. v. U.S. Dist. Ct. for W. Dist. of Tex.*, 571 U.S. 49, 55 (2013)). "Once a defendant raises the issue of venue through a motion to dismiss, the plaintiff has the burden to demonstrate that venue is proper." *Krick*, 695 F. Supp. 3d at 209 (citing *Cordis Corp. v. Cardiac Pacemakers*, 599 F.2d 1085, 1086 (1st Cir. 1979)).

Finally, the United States seeks to dismiss Plaintiffs' DOHSA and ATS counts for failure to state a claim upon which relief can be granted. To survive a Rule 12(b)(6) motion to dismiss, the Complaint must show "sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)); Fed. R. Civ. P. 8(a)(2).

IV.    ARGUMENT

Plaintiffs' Complaint is defective on multiple grounds and must be dismissed. First, Plaintiffs fail to assert a viable waiver of sovereign immunity. The SAA authorizes venue in only two places: Plaintiffs must sue in *either* the district of their residence *or* where a vessel charged with liability is located. Plaintiffs have not pleaded either. They do not allege that any vessel is liable, and they allege they are nonresident aliens who are not present in any judicial district of the United States. For this reason, transfer is unavailable under 46 U.S.C. § 30906(b) or 28

U.S.C. § 1406(a), and dismissal is the appropriate result.

Second, Plaintiffs' wrongful death action under DOHSA must be dismissed under Rule 12(b)(6) because Plaintiffs failed to plead that they are personal representatives of the decedents. The plain text of DOHSA and Supreme Court precedent is clear:  a DOHSA action can only be brought by the decedent's personal representative, which Plaintiffs expressly plead they are not. Accordingly, Plaintiffs have not stated a claim for relief under DOHSA.  Moreover, and in the alternative, the DOHSA claims must be dismissed under Rule 12(b)(1) for lack of subject matter jurisdiction because, in admitting they are not the personal representatives of the decedents' estates, Plaintiffs fail to satisfy a critical element of the waiver of sovereign immunity to bring a DOHSA action against the United States.

Third, Plaintiffs' ATS count must be dismissed under Rule 12(b)(1) and 12(b)(6) because (1) DOHSA displaces any ATS claim, and (2) this Court should decline to create a new ATS cause of action on these facts.

A.    Venue Is Improper in This and Any Other Judicial District, Compelling Dismissal.

Plaintiffs allege that sovereign immunity is waived and venue in this district is proper under the SAA.  Doc. 1 at ¶¶ 15–16.  But the SAA waives sovereign immunity only for actions brought in a judicial district where a plaintiff resides or where the vessel charged with liability is found.  46 U.S.C. § 30906(a).  And it is uncontested that Plaintiffs do not reside within the District of Massachusetts—nor any other judicial district in the United States—and that the Complaint does not allege the involvement of any U.S. vessel of any kind.  *See generally* Doc. No. 1.  Therefore, this district is "wrong" under the plain text of the SAA.  *See* 46 U.S.C. § 30906; *Atl. Marine Constr. Co.,* 571 U.S. at 58 ("[A] 'wrong' district is therefore a district other than those districts in which Congress has provided *by its venue statutes* that the action

'may be brought.'" (quotations omitted)).  And dismissal, as opposed to transfer, is required because there is no appropriate venue in which Plaintiffs could bring this action.

    1.   *Venue Is Improper Under the Plain Text of the SAA.*

In determining proper venue under the SAA, "we begin, as we must, with a careful examination of the statutory text." *Henson v. Santander Consumer USA, Inc.*, 582 U.S. 79, 83 (2017); *United States v. Vidal-Reyes*, 562 F.3d 43, 50 (1st Cir. 2009) ("In interpreting the meaning of the statute, our analysis begins with the statute's text.").  Under the SAA, a civil suit in admiralty "*shall* be brought in the district court of the United States for the district in which— (1) any plaintiff resides or has its principal place of business; or (2) the vessel or cargo is found." 46 U.S.C. § 30906(a) (emphasis added).  These provisions have been described as "mandatory." *Waterman S.S. Corp. v. United States*, 2007 WL 9775504, at *1, 2 (W.D. Wash. Apr. 5, 2007).

Congress could not have spoken more clearly:  a suit under the SAA "shall be brought" in a judicial district that meets one of two requirements.  Congress provided no alternatives.  *Maine Cmty. Health Options v. United State*s, 590 U.S. 296, 310 (2020) ("Unlike the word 'may,' which implies discretion, the word 'shall' usually connotes a requirement." (quotation omitted)); *see also Smith v. Spizzirri*, 601 U.S. 472, 472 (2024) ("The statute's use of the word 'shall' creates an obligation impervious to judicial discretion." (quotation omitted)).  Because Congress has clearly delineated where such actions may be brought under the SAA, the Court must give full effect to the venue provision and dismiss this matter.  *See Barnhart v. Thomas*, 540 U.S. 20, 26 (2003) (noting that "when a statute speaks clearly to the issue at hand we 'must give effect to the unambiguously expressed intent of Congress'" (citation omitted)).  The unambiguous meaning of the plain text ends the inquiry.  *See Matal v. Tam*, 582 U.S. 218, 232 (2017); *see also Culbertson v. Berryhill*, 586 U.S. 53, 58 (2019) ("We begin with the language of the statute itself, and that is

6

also where the inquiry should end, for the statute's language is plain.") (citation modified);
*United States v. Roberson*, 459 F.3d 39, 51 (1st Cir. 2006) ("If the statutory language provides a clear answer, the inquiry ends.").

> 2. *Legislative History, Amendments, and the Statutory Scheme Demonstrate that Congress's Venue Choices in the SAA Were Deliberate.*

Even courts that resort to legislative history when the statute's language is clear do so only "as a check on the understanding of the statute as viewed in light of its text and the statutory scheme as a whole." *Succar v. Ashcroft*, 394 F.3d 8, 31 (1st Cir. 2005). Delving into the legislative history of the SAA only reinforces that there is no proper venue in this case. *See generally United States v. United Cont'l Tuna Corp.,* 425 U.S. 164, 170–78 (1976). Indeed, the long path to passage of the SAA confirms Congress's clear intent to allow only two venue choices in the SAA. In the early twentieth century (as now), venue in admiralty cases was proper where any defendant was located. Rule 2, 1907 Admiralty R. of Practice, 210 U.S. 544 (1907). This was the backdrop against which Congress considered waiving sovereign immunity for actions involving public vessels. *See Miles v. Apex Marine Corp.*, 498 U.S. 19, 32 (1990) ("We assume that Congress is aware of existing law when it passes legislation.").

Congress considered whether or how to narrow these venue rules before waiving sovereign immunity. Congress even considered the possibility of permitting suit by a vessel owner in the owner's district of residence, but that proposal was criticized for allowing "an unlimited right to the suitor . . . to select the district." *Amends. to Admiralty Law*: *Hearing on S. 6289, S. 6290, S. 6291, S. 7334, S. 7501 Before the S. Subcomm. of the Comm. on the Judiciary*, 61st Cong. 13-14 (1910) (statement of Archibald G. Thacher, Counselor at Law and Proctor in Admiralty, New York). One proposal would have given the Attorney General the right to remove a case to the judicial district where the vessel was then located or, if at sea, the district

7

for which it was bound.  *See id.* (referencing S. 7334).  That idea never advanced.

The range of venue options considered by Congress was at its zenith in a prior draft of the bill:

> Any such suit shall be brought [(1)] in the district court of the United States for the district in which the parties so suing, or any of them, reside or have their principal place of business in the United States, or [(2)] in which the vessel or cargo charged with liability is found, or [(3)] in the district in or nearest which the cause of action arises, or [(4)] in any district in which the Attorney General, or other duly authorized law officer, may agree to appear.

S. 3076, 66th Cong. (1919).  In the end, only Options 1 and 2 became law.  H.R. Rep. No. 66-497, at 1 (1919).  That Congress struck Options 3 and 4, which would have provided venue options for all suitors, speaks to the purposefulness with which Congress constructed the SAA venue rules, including Congress's intent to limit the venue choices.[4]  Congress's subsequent amendments to the SAA—seven different times since its passage in 1920—did not alter the venue requirements and thus confirms Congress's clear intent as expressed in the original statute.[5]

Finally, the language of the Public Vessels Act of 1925 ("PVA") removes any doubt concerning the scope of the venue provision in the SAA.  Congress passed the PVA in 1925, five years after the SAA, to waive sovereign immunity for harm attributed to non-merchant public vessels.  *See United Cont'l Tuna Corp.*, 425 U.S. at 167, 180–81.  Significantly, in contrast to the

---

[4] One practitioner testified: "If this bill passes it gives only the right to libel in certain-named districts."  *Authorizing Suits Against the United States in Admiralty, etc., Hearing on H.R. 7124 Before the H. Comm. on the Judiciary*, 66th Cong. 37 (1910) (statement of Mr. Charles S. Haight, of the Law Firm of Haight, Sanford, Smith & Griffin, New York).

[5] *See* Act of June 30, 1932, Pub. L. No. 72-213, 47 Stat. 420; Act of Dec. 13, 1950, Pub. L. No. 81-877, 64 Stat. 1112; Act of Aug. 30, 1954, Pub. L. No. 83-706, § 26, 68 Stat. 966; Act of Sept. 13, 1960, Pub. L. No. 86-770, Sec. 3, § 2, 74 Stat. 912, 912–913; Maritime Act of 1981, Pub. L. No. 97-31, 95 Stat. 151, 155; Coast Guard Authorization Act of 1996, Sec. 1105, § 2, Pub. L. No. 104-324, 110 Stat. 3901, 3967; Act of Oct. 6, 2006, ch. 309, Pub. L. No. 109-304, 120 Stat. 1485, 1517–21 (2006).

SAA, Congress chose to include a fallback universal venue provision in the PVA, which provides:  "if no plaintiff resides or has an office for the transaction of business in the United States, the action may be brought in the district court of the United States for *any* district."  46 U.S.C. § 31104 (emphasis added); *see also United Cont'l Tuna Corp.,* 425 U.S. at 168 n.2 (recognizing that the PVA's venue provisions are broader than the SAA's provisions).  But the availability of the PVA's universal venue provision is circumscribed.

In allowing foreign nationals to file suit in any district, Congress attached a reciprocal condition on this venue choice:  they could sue under the PVA only if their country of nationality would waive immunity in a like suit brought by a United States citizen.  46 U.S.C. § 31111; *United Cont'l Tuna Corp.*, 425 U.S. at 171–72.  This reciprocity provision "was central to the scheme enacted by Congress" in part due to questions during the passage of the PVA about "whether the Act gave foreign nationals the same rights as citizens to bring suit."  *Id.* at 172. Judicially shoehorning a universal venue provision similar to the PVA's into the SAA, as Plaintiffs advocate, without an equivalent reciprocity provision, would have the perverse consequence of granting nonresident aliens greater rights to bring suit under the SAA than U.S. citizens residing in the United States.  That is an outcome Congress explicitly sought to avoid in the PVA unless the foreign national's country offered the same opportunity for U.S. citizens suing the foreign country.[6]

The fact that Congress included a fallback venue choice in the PVA—and added a reciprocity mandate as a condition precedent to the application of that fallback provision—is

---

[6] When nonresident alien plaintiffs do not plead and prove reciprocity under the PVA, a court is compelled to dismiss their claims.  *See, e.g.*, *Harrington v. United States*, 748 F. Supp. 919, 929 (D.P.R. 1990); *W.E. Rippon & Son v. United States*, 1963 WL 106274, at *9 (S.D.N.Y. Sept. 12, 1963).

evidence that it knew how to, but did not intend to, include such a provision in the SAA. *See Ysleta Del Sur Pueblo v. Texas*, 596 U.S. 685, 704 (2022) ("Congress knows exactly how to adopt into federal law the terms of another writing or resolution when it wishes."); *Rubin v. Islamic Republic of Iran*, 583 U.S. 202, 216 (2018) (Congress knows "how to say so" when it wants a different statutory outcome); *Barnhart v. Sigmon Coal Co.*, 534 U.S. 438, 452, 453 (2002) ("Where Congress wanted to provide for [a different outcome], it did so explicitly, as demonstrated by" other statutory provisions that provide for that outcome). If Congress wants to allow nonresident aliens to sue the United States under the SAA, it knows how to craft a venue provision to permit such actions, as evidenced by the venue provision in the PVA. It has not done so. And it is the Judiciary's "duty to respect not only what Congress wrote but, as importantly, what it didn't write." *Virginia Uranium, Inc. v. Warren*, 587 U.S. 761, 765 (2019).

### 3. *Courts Faithfully Adhere to What Congress Said.*

Only five years after the SAA was enacted, the Supreme Court took up the issue of "venue as to the District Courts in which suits could be brought" under the SAA in *Nahmeh v. United States*, 267 U.S. 122 (1925). *See E. Transp. Co. v. United States*, 272 U.S. 675, 691–92 (1927) (discussing the *Nahmeh* decision). The *Nahmeh* Court held that either being a resident of, or having the vessel in, the district would provide venue. *Nahmeh*, 267 U.S. at 125–26.

In the decades that followed, courts interpreting the SAA's venue provisions consistently read them to bar nonresidents from bringing suit when the vessel involved in the action was not present in the judicial district. *See, e.g.*, *Carroll v. United States*, 133 F.2d 690, 693 (2d Cir. 1943) (holding that "the judge should have dismissed the libel as to the United States, either because it lacked substantive jurisdiction, or because the suit was brought in the wrong district"); *Frank & Hirsch Distrib. Co. v. United States*, 76 F. Supp. 501, 501 (S.D.N.Y. 1947) (holding a

complaint "fatally defective" for containing "no allegations to satisfy" venue under the SAA);

*Haesen v. United States*, 66 F. Supp. 759, 760–61 (E.D.N.Y. 1946) (noting, in dicta, that a

foreign plaintiff's "failure to meet the plain requirements of" the SAA would "present[] a

difficulty from which no ready exit would have been apparent to me"); *Sawyer v. United States*,

66 F. Supp. 271, 277 (S.D.N.Y. 1946) (describing the complaint as "completely defective"

because neither plaintiff nor vessel were in the district); *Barnes v. United States*, 67 F. Supp. 571,

572–73 (S.D.N.Y. 1946) (same); *Abbott v. United States*, 61 F. Supp. 989, 991–92 (S.D.N.Y.

1945) ("[T]he venue of the suit is wrong, and the libel must be dismissed for lack of

jurisdiction."). This body of caselaw confirms that venue is improper here. *Lorillard v. Pons*,

434 U.S. 575, 580 (1978) ("Congress is presumed to be aware of [a] . . . judicial interpretation of

a statute and to adopt that interpretation when it re-enacts a statute without change.").

### 4. *Plaintiffs' Cited Cases Do Not Overcome the Weight of Authority.*

Undeterred by precedent, and ignoring the plain meaning of the statutory text, Plaintiffs

allege a right to bring suit in *any* district court of their choosing, *see* Doc. No. 1 ¶ 16, which

would mean that nonresident aliens receive more favorable treatment than U.S. citizens and U.S.

resident aliens. But the case Plaintiffs cite for this proposition cannot overcome the weight of

authority arrayed against them.

The Complaint cites *Malajalian v. United States*, 504 F.2d 842, 844 (1st Cir. 1974), a

federal tax case affirming dismissal of a nonresident alien taxpayer's case for lack of venue.

Doc. No. 1 ¶ 16. There, the court addressed the taxpayer-plaintiff's attempt to evade the plain

text of an applicable venue provision by analogizing to a series of cases involving nonresident

aliens under the SAA. *Malajalian*, 504 F.2d at 844. It noted that some courts had implied venue

rights into the SAA, explained that at least one court had held to the contrary, and then concluded

11

that those cases were "inapposite." *Id*. In short, Plaintiffs rely upon a case about a taxpayer's losing bid to obtain ultra-statutory venue rights. At best for Plaintiffs, *Malajalian* is irrelevant. At worst, it supports Defendant's contention that venue does not exist in this Court.

The cases cited in *Malajalian* are similarly unhelpful. The first is *The Elmac*, in which a foreign corporate plaintiff was "not alleged to reside or have its principal place of business in this country." 285 F. 665, 665 (S.D.N.Y. 1922). The lack of venue was a "fatal objection to the suit, which is purely statutory, and must conform to statutory requirements." *Id. The Elmac* case supports Defendant's position, not that of Plaintiffs.

In addition to *The Elmac*, *Malajalian* collects four additional cases discussing venue under the SAA for claims brought by nonresident aliens. *See Malajalian*, 504 F.2d at 844. They are: *McGhee v. United States*, 154 F.2d 101 (2d Cir. 1946); *Metaxas v. United States*, 68 F. Supp. 667 (S.D. Cal. 1946); *Middleton & Co. v. United States*, 273 F. 199 (E.D.S.C. 1921); and *Kulukundis v. United States*, 132 Ct. Cl. 644 (Ct. Cl. 1955). These, too, are unhelpful and do not support the proposition that venue is proper in this Court under the SAA. The cases cited are either inapposite, addressing venue for actions brought under a different statute than the ones at issue here, or do not squarely address whether venue under the SAA is permissible in any district for nonresident aliens under the language of the SAA.

*McGhee* does not help Plaintiffs because it does not actually address the applicability of the SAA's venue provision. *See McGhee*, 154 F.2d at 104 (noting one judge would find the issue of venue waived by the government and the other two "pass the point without deciding it"). Indeed, the decision recognized that the SAA's venue provision poses insurmountable obstacles to foreign plaintiffs in admiralty cases against the United States because it "requires all suits to be brought at the libellant's residence, or where the ship may be found." *Id.*

12

The *McGhee* court sidestepped ruling on the scope of the SAA's venue provision by determining that the action was brought pursuant to the Clarification Act of 1943, ch. 26, 57 Stat. 45 (1943) (codified at 50 U.S.C. § 1291), which incorporates the SAA by reference.[7] *See id.* The Clarification Act provided foreign seamen working for the War Shipping Administration who served on the United States' vessels during World War II with all of the rights enjoyed by American seamen employed on private vessels. *See id.*; *McGhee*, 154 F.2d at 104. In so doing, it authorized these foreign seamen to recover through administrative claims or, if necessary, by suing under the provisions of the SAA. *See McGhee*, 154 F.2d at 104. *McGhee* recognized that establishing venue under the SAA would be difficult for these foreign seamen because most "resided" outside the United States, and the merchant marine ships on which they served were lost in "alarming numbers" during the war, so the vessels often would not be at port in the United States. *Id.* The court reasoned that a strict grafting of SAA venue rules onto the Clarification Act would frustrate Congress's purpose in enacting the legislation to provide remedies for seamen who manned the United States' merchant marine during wartime. *Id.* Accordingly, the court declined to import SAA venue rules wholesale into the Clarification Act. *Id.*

But those are not the facts here. Plaintiffs are not foreign seamen with rights under the Clarification Act. And all evidence, including the *McGhee* decision, indicates Congress did not intend to allow claims under the SAA by plaintiffs who did not reside in the United States or when no vessel charged with liability was present in the United States. Congress's repeated declinations to amend the SAA to add alternative venue choices over the years, despite repeated judicial decisions on the matter, confirms it. Indeed, Congress enacted a separate piece of legislation—the Clarification Act—to create a narrow and time-bound expansion allowing a

---

[7] The Clarification Act is currently codified at 50 U.S.C. §§ 4701–05.

13

specific group of individuals to bring SAA claims, rather than directly expand the SAA's venue provision. And other courts addressing venue under the SAA when Clarification Act seamen were not involved have distinguished *McGhee* on the grounds that it interprets the Clarification Act rather than the SAA. *See, e.g.*, *Barnes*, 67 F. Supp. at 573 ("The court, by judicial construction, departed from the literal venue provision of Sec. 1291(a). It did not construe [the venue provision of the SAA] with which we are here concerned."); *Haesen*, 66 F. Supp. at 761 (questioning "whether Congress, under the guise of extending to alien seamen all rights pertaining to American seamen [via the Clarification Act] caused something more than that to be brought to pass"). Because *McGhee* does not address venue under the SAA, it is inapposite to the issue at hand.[8] But, even if it were applicable here, the *McGhee* court's policy-based reasoning cannot be squared with modern Supreme Court precedents, which hold that "policy concerns cannot trump the best interpretation of the statutory text." *Patel v. Garland*, 596 U.S. 328, 346 (2022); *Henry Schein, Inc. v. Archer & White Sales, Inc.*, 586 U.S. 63, 70 (2019) ("[Courts] may not engraft [their] own exceptions onto the statutory text.").

*Metaxas*, which followed *McGhee*, likewise interpreted the Clarification Act, not the SAA. *See Metaxas*, 68 F. Supp. at 670. After acknowledging that the "literal test finds the words missing," the court justified departing from the statutory text because "there can be no doubt

---

[8] In a subsequent SAA case, a court transposed the *McGhee* court's Clarification Act reasoning to the very different context of ensuring a foreign vessel owner had a venue to enforce a maritime lien against the United States in federal court. *See Saint John Marine Co. v. United States*, No. 91-cv-4861, 1994 WL 281937, at *1, 2, 6 (S.D.N.Y. June 22, 1994). Without recognizing the special circumstances that animated the *McGhee* court's interpretation of the Clarification Act, and without any analysis of the SAA's distinct purpose, the court permitted a suit by the Greek corporation under the SAA in any district in the United States because the court thought that it "'does no more violence to the letter of the statute than is frequently permissible when its obvious purpose will be otherwise defeated.'" *Id.* at *6 (quoting *McGhee*, 154 F.2d at 104). That conclusion and analysis is simply wrong because the court had no authority to rewrite the statute.

from the legislative history that Congress intended to provide . . . a convenient forum for alien seamen employed on United States or foreign flag vessels as employees of the United States through the War Shipping Administration." *Id.* (quotation omitted). But again, even if *Metaxas* were the law, Plaintiffs do not bring claims under the Clarification Act and do not meet its or the SAA's venue criteria. Just like *McGhee*, *Metaxas* is inapposite to Plaintiffs' claims. *See, e.g.,* *Barnes*, 67 F. Supp. at 573.

*Kulukundis* involved a nonresident alien's claim for recovery of salvage expenses after the United States chartered the plaintiff's vessel and ran it aground. 132 F. Supp. at 478. In determining whether the case was properly brought in the Court of Claims pursuant to the Tucker Act rather than in a U.S. district court, the court rejected the foreign-plaintiff's argument that the SAA "is not applicable to him" as a nonresident alien. *See id.* The court reasoned that, although the plaintiff's non-residency status makes venue "somewhat uncertain," that fact could not deprive the district courts of jurisdiction over claims within the SAA's scope. *Id.* (holding that the SAA venue provision was not jurisdictional and could be waived by the United States (citing *Hoiness v. United States*, 335 U.S. 297, 302 (1948))).[9] Accordingly, the court dismissed the action because, as an admiralty action, it did not belong in the Court of Claims.

This leaves *Middleton & Co.*, a 1921 district court case from South Carolina that considered whether the SAA allowed a non-resident Japanese corporation to sue in any district. 273 F. at 201. The court never decided that question. Because the nominal plaintiff—an agent for the Japanese corporation—had its principal place of business in the district, the court

---

[9] The *Hoiness* court observed that if the United States is "willing to defend" an SAA case in a district other than in the statutorily defined venue options, then the Court could "find nothing in the [SAA] to prevent it." *Hoiness*, 335 U.S. at 302. The United States does not waive the statutory venue requirements in this case.

dismissed the United States' motion "without prejudice to the defendant to renew it at the trial." *Id.*

In dicta, the court surmised that "it would appear that" the corporation for whom Middleton & Co. acted as agents "could sue in any district in the United States." *Id.* This purported legal proposition was based on cryptic "principles to be deduced from preceding decisions of the federal courts in analogous cases." *Id.* Even though the court did not identify these other cases or provide any other support for this assertion, *see id.*, the *Middleton* case became the headwaters of confusion over whether courts can provide an extra-statutory venue choice under the SAA. *See, e.g.*, *Kulukundis*, 132 F. Supp. at 478 (citing *Middleton*). *Middleton*, unsupported as it is by any case law, authority, or reasoning cannot serve as persuasive authority.

The cases indirectly cited by Plaintiffs are bereft of authority and rationale for the proposition that courts may ignore plain statutory text in favor of interpretations that belie Congress's clear intent. *See, e.g.*, *Middleton & Co.*, 273 F. at 201. The cases also invoke two broader notions of jurisprudence: (1) that Congress could not have intended to create a "venue gap," and (2) that courts are empowered to rewrite the statute to achieve their interpretation of Congress's intent. *See, e.g.*, *Metaxas*, 68 F. Supp. at 670. Both propositions are wrong.

*First*, no venue gap exists here. "There is a basic difference between filling a gap left by Congress's silence and rewriting rules that Congress has affirmatively and specifically enacted." *Lamie v. United States Trustee*, 540 U.S. 526, 538 (2004). Here, Congress made a deliberate choice to limit venue options for SAA claims by affirmatively providing for venue in only two specific situations and no other. Nonetheless, even in situations with inadvertent venue gaps, courts have recognized and respected those gaps. For example, in *Brunette Mach. Works, Ltd. v. Kockum Indus., Inc.*, the Court noted that there "have been, and perhaps there still are, occasional

16

gaps in the venue laws." 406 U.S. 706, 710 n.8 (1972). It gave as an example a 1966 statute where Congress closed a particular gap that existed—absent which suitors could not proceed. *See id.* But here, for over one hundred years, Congress chose not to provide venue under the SAA for non-resident plaintiffs and where no vessel charged with fault is found in a district of the United States.

*Second*, the decisions upon which Plaintiffs rely for the proposition that an additional venue provision can be implied into the SAA run afoul of Supreme Court precedent which strongly disfavors judicial "rewriting" of statutes to create exceptions not in the statute. *See, e.g.*, *Bostock v. Clayton County*, 590 U.S. 644, 680–81 (2020) ("Nor is there any such thing as a 'canon of donut holes,' in which Congress's failure to speak directly to a specific case that falls within a more general statutory rule creates a tacit exception. Instead, when Congress chooses not to include any exceptions to a broad rule, courts apply the broad rule."); *Nasrallah v. Barr*, 590 U.S. 573, 583 (2020) (noting it would be easy for Congress to employ a jurisdictional restriction in one provision into another "[b]ut Congress has not done so, and it is not the proper role of the courts to rewrite the laws passed by Congress and signed by the President."); *Virginia Uranium*, 587 U.S. at 765 ("And we are hardly free to extend a federal statute to a sphere Congress was well aware of but chose to leave alone. In this, as in any field of statutory interpretation, it is our duty to respect not only what Congress wrote but, as importantly, what it didn't write."). Even if the Court were inclined to conclude that Plaintiffs fall within a proverbial venue gap—and it should not—the Court cannot deviate from the plain text of the statute.

     5.   *Dismissal Rather than Transfer Is Appropriate.*

Transfer to another judicial district would not cure the venue defect in Plaintiffs'

17

Complaint.  Under the SAA, courts are permitted to transfer cases to another district, but that does not confer power to transfer a case from one wrong district to another wrong district. 46 U.S.C. § 30906(b) ("On a motion by a party, the court may transfer the action to any other district court of the United States."); *Atl. Marine Constr. Co.*, 571 U.S. at 58 ("[A] 'wrong' district is therefore a district other than those districts in which Congress has provided *by its venue statutes* that the action 'may be brought.'" (quotations omitted)).[10]

While the broader venue provisions of 28 U.S.C. § 1391 do not apply to admiralty cases, the transfer or dismissal provisions of § 1406 do apply.  *See* 28 U.S.C. § 1390; *Henderson*, 517 U.S. at 666–67.  Under § 1406(a), when venue is improper, a court "*shall dismiss*" the case or "if it be in the interest of justice, transfer such case to any district or division *in which it could have been brought*."  *Id.* (emphasis added); *see also Krick*, 695 F. Supp. 3d at 209.  Because there is no other district in which this action "could have been brought," section 1406(a) requires dismissal.

Dismissal, as opposed to transfer, is also appropriate because the lack of *any* viable venue option under the SAA necessarily implicates whether the United States has waived sovereign immunity for claims by these Plaintiffs.  The SAA provides only two venue options, 46 U.S.C. § 30906(a), and these options thus define the extent of its waiver of sovereign immunity.  *Cf. Port Auth. Trans-Hudson Corp.*, 495 U.S. 299, 307 (1990) ("Although one might not look first to a venue provision to find evidence of waiver of [Eleventh Amendment] sovereign immunity, we believe that the [venue] provision directly indicates the extent of the States' waiver embodied in

---

[10] Congress added this transfer power "simultaneously . . . to the [SAA], the [PVA], and the [FTCA] . . . so that 'jurisdictional' dismissals could be avoided when plaintiffs commenced suit under the wrong statute."  *Henderson v. United States*, 517 U.S. 654, 667 (1996) (citing S. Rep. No. 1894, 86th Cong., 2d Sess., at 2–5 (1960)).

the consent provision."); *Merchia v. Va. Bd. of Med.,* No. CV 18-11136-FDS, 2019 WL 7567831, at \*6 (D. Mass. Apr. 2, 2019), *aff'd*, No. 19-1571, 2022 WL 18670793 (1st Cir. Nov. 14, 2022) (dismissing claim against a state entity on the basis of sovereign immunity, in part, because venue was not appropriate under the alleged waiver of sovereign immunity); *Argonaut Navigation Co. v. United States*, 142 F. Supp. 489, 490 (S.D.N.Y. 1956) (dismissing action under the Tucker Act because plaintiff was a Canadian citizen and thus did not satisfy the venue provision requiring plaintiffs to reside in the judicial district and holding that "since this is an action against the sovereign which has given its consent to be sued under certain conditions and those conditions have not been met, this court must follow the plain and concise dictates of the statute and grant the motion to dismiss for lack of venue.").

Accordingly, given that the United States has not waived sovereign immunity under the SAA for suits by nonresident aliens in judicial districts where they do not reside, dismissal of Plaintiffs' claims for improper venue should be under both Rule 12(b)(1) and Rule 12(b)(3). This is so even though venue itself under the SAA is not jurisdictional, *see Hoiness*, 335 U.S. at 302, because the proper procedural mechanism to raise a sovereign immunity defense is a motion to dismiss for lack of subject matter jurisdiction. *Clemente Props., Inc.*, 165 F.4th at 11 n.3. Plaintiffs' avenue to address the exclusion of their claims from the SAA resides with Congress, not with the courts. *Bostock*, 590 U.S. at 680–81 ("The place to . . . address unwanted consequences of old legislation, lies in Congress.").

19

B.      Plaintiffs' DOHSA Claim Should Be Dismissed for Lack of Statutory Standing.

Even if they could establish venue, Plaintiffs' Complaint is further subject to dismissal under Rule 12(b)(6), or, in the alternative, Rule 12(b)(1) because Plaintiffs fail to allege they have statutory standing to pursue a cause of action under DOHSA.[11]

1.      *Plaintiffs Lack Standing to Bring a DOHSA Action.*

In its "[c]ause of action" section, DOHSA provides:

> When the death of an individual is caused by wrongful act, neglect, or default occurring on the high seas beyond 3 nautical miles from the shore of the United States, the *personal representative of the decedent* may bring a civil action in admiralty against the person or vessel responsible. The action shall be for the exclusive benefit of the decedent's spouse, parent, child, or dependent relative.

46 U.S.C. § 30302 (emphasis added). Indeed, the Supreme Court has concluded that a DOHSA action must "be brought by the decedent's personal representative." *Dooley v. Korean Air Lines, Co.*, 524 U.S. 116, 121 (1998).

The phrase "'personal representative[]'" is used to "designat[e] executors or administrators [of estates] and not next of kin, in acts of congress giving actions for wrongs or injuries causing death." *Briggs v. Walker*, 171 U.S. 466, 472–73 (1898); *see also Alcabasa v. Korean Air Lines, Co.*, 62 F.3d 404, 407 (D.C. Cir. 1995) ("[A] 'personal representative' is by definition a court-appointed executor or administrator of an estate, not merely an heir."). And courts across "jurisdictions are in virtually unanimous agreement" that this definition applies to DOHSA. *Credle v. United States*, 904 F. Supp. 2d 527, 528 (D. Md. 2012) (collecting cases).[12]

---

[11] "Statutory standing is a horse of a different hue" as compared to Article III standing because the former "relates to whether the plaintiff has a cause of action under a particular statute," whereas the latter is "a prerequisite to a court's power to adjudicate a case." *United States v. Catala*, 870 F.3d 6, 10 (1st Cir. 2017).

[12] *See also Blanco v. United States*, 464 F. Supp. 927, 933 (S.D.N.Y. 1979) ("The personality of the Plaintiff, to whom the cause of action is given, is the creature of the statute. The statute could as well have given the cause of action to the Clerk of the Court or the District Attorney to

"Courts have consistently interpreted" this DOHSA requirement to mean that "*only* the personal representative may bring the claims" on behalf of the beneficiaries. *Krick v. Raytheon Co.*, --- F. Supp. 3d ---, No. 23-CV-8093, 2026 WL 607395, at *5 (E.D.N.Y. Mar. 2, 2026); *see, e.g.*, *Cruz v. Korean Air Lines Co.*, 838 F. Supp. 843, 846–47 (S.D.N.Y. 1993); *see also, e.g.*, *Kole v. Korean Air Lines Co.*, No. 95-15117, 1996 WL 436514, at *1 (9th Cir. 1996) (unpublished table decision) (only a personal representative can bring a suit under DOHSA); *Alcabasa*, 62 F.3d at 407 (same); *Futch v. Midland Enters., Inc.*, 471 F.2d 1195, 1195 (5th Cir. 1973) (decedent's father's concession that he was not the personal representative of the estate "necessarily conceded" that he could not bring suit under DOHSA).

This means that a plaintiff must "fall[] within the class of plaintiffs whom Congress has authorized to sue under" the statute. *Lexmark Int'l, Inc. v. Static Control Components, Inc.*, 572 U.S. 118, 128 (2014); *see, e.g.*, *Katz v. Pershing, LLC*, 672 F.3d 64, 75 (1st Cir. 2012) (referring to this inquiry as statutory standing); *Steer v. Charles Stark Draper Lab., Inc.*, No. 24-CV-13105, 2026 WL 444637, at *4 (D. Mass. Feb. 17, 2026) (same). When courts have examined whether putative plaintiffs in DOHSA suits are the personal representatives of the estates and discovered they are not, those courts have found that such plaintiffs lack statutory standing under DOHSA. *See, e.g.*, *Hassanati v. Int'l Lease Fin. Corp.*, 738 Fed. Appx. 443, 444 (9th Cir. 2018); *Kole*, 1996 WL 436514 *1; *In re James T. Anderson*, 847 F. Supp. 2d 1263, 1271 (W.D. Wash. 2012); *Helman v. Alcoa Global Fasteners, Inc.*, 843 F. Supp. 2d 1038, 1042 (C.D. Cal. 2011).

Here, Plaintiffs have not pleaded that they are court-appointed personal representatives or executors of the decedents' estates. Doc. No. 1 ¶¶ 17–18, 77, 80. Plaintiff Burnley pleads that the family has "decided" that she "will represent" the estate and "has retained local counsel in

---

act as trustee in bringing the suit for the benefit of the relatives suffering pecuniary loss.").

21

Trinidad for the purpose of effectuating [her] appointment as the estate's personal representative." *Id.* ¶ 17. Likewise, Plaintiff Korasingh's family "decided" that she "will represent" the estate and "has retained local counsel in Trinidad for the purpose of effectuating [her] appointment as the estate's personal representative." *Id.* ¶ 18. But, given that there are multiple surviving family members who could, in theory, be appointed as personal representatives, Doc. No. 1 ¶¶ 27, 35, 40, it is possible that a Trinidadian court could appoint someone other than Plaintiffs here as personal representatives of the decedents' estates. Until the appropriate courts issue formal letters of administration to one person to represent each estate's beneficiaries, no person has statutory standing to bring this DOHSA action. Plaintiffs' failure to show statutory standing "goes to the merits of the claim," *Katz*, 672 F.3d at 75, and thus is subject to dismissal under Rule 12(b)(6). *See Foisie v. Worcester Polytechnic Inst.*, 967 F.3d 27, 44 (1st Cir. 2020); *Steer*, 2026 WL 444637, at \*4; *Sarvis v. Polyvore, Inc.*, No. 12-12244, 2013 WL 4056208, at \*6 (D. Mass. 2013).[13]

For these reasons, the Court should dismiss Plaintiffs' DOHSA claims.

2.  *Plaintiffs' Lack of Statutory Standing Imbues the Complaint with a Jurisdictional Defect.*

Plaintiffs' lack of statutory standing to bring this DOHSA action also deprives the Court of subject-matter jurisdiction over their claims against the United States. "It is axiomatic that the United States may not be sued without its consent and that the existence of consent is a prerequisite for jurisdiction." *United States v. Mitchell*, 463 U.S. 206, 212 (1983). "Indeed, the

---

[13] Plaintiffs will not be prejudiced by dismissal for lack of statutory standing. Under the SAA, Plaintiffs have two years from the date the cause of action arose to bring this action. 46 U.S.C. § 30905. Taking their allegations as to the date of the incident as true, the statute of limitations will not run until October 2027, giving the Trinidadian courts time to appoint personal representatives for the decedents' estates.

terms of the United States' consent to be sued in any court define that court's jurisdiction to entertain the suit." *F.D.I.C. v. Meyer*, 510 U.S. 471, 475 (1994) (citation modified).

In *Brownback v. King*, the Supreme Court considered the jurisdictional significance of a district court's judgment on the merits in light of the "judgment bar" of the Federal Tort Claims Act, 28 U.S.C. § 2676. 592 U.S. 209, 212 (2021). The Supreme Court explained that while, "[i]n most cases, a plaintiff's failure to state a claim under Rule 12(b)(6) does not deprive a federal court of subject-matter jurisdiction . . . in the unique context of the FTCA, all elements of a meritorious claim are also jurisdictional." *Id.* at 217. A plaintiff must "plausibly allege" each jurisdictional element of her claim, including that "'the United States, if a private person, would be liable to the claimant' under state law both to survive a merits determination under Rule 12(b)(6) and to establish subject-matter jurisdiction." *Id.* at 218 (quoting 28 U.S.C. § 1346(b)(1)).

Here, Plaintiffs invoke the SAA, which waives sovereign immunity only if a "civil action in admiralty" could be "maintained" against a private person in like circumstances. 46 U.S.C. § 30903(a). This private-person requirement is functionally equivalent to the FTCA language the Supreme Court relied on in *Brownback*. *See* 592 U.S. at 218; *see also* Doc. No. 1 ¶ 15 (relying on the same private-person analogue). Plaintiffs lack statutory standing to bring a civil action in admiralty against a private person in like circumstances, which means they have failed to plausibly allege each jurisdictional element of the SAA. *See* 46 U.S.C. § 30903(a). As a result, "the United States necessarily retain[s] sovereign immunity, also depriving the court of subject-matter jurisdiction." *Brownback*, 592 U.S. at 217–18.

23

C.    Plaintiffs' ATS Claim Must Be Dismissed Because It Is Displaced by DOHSA, and, Even If It Were Not, the Court Should Not Imply a Private Right of Action Under the ATS.

In addition to DOHSA, Plaintiffs seek money damages under the ATS for what they claimed to be "extrajudicial killing[s]" in violation of "customary international law norm[s]." Doc. No. 1 ¶¶ 81–87.  These claims must be dismissed for two reasons.

1.  *Because DOHSA Provides the Exclusive Remedy for Wrongful Deaths on the High Seas, Plaintiffs' ATS Claims Are Displaced.*

As a sovereign, the United States may only be sued if it consents to be sued.  *See Meyer*, 510 U.S. at 475; *Mitchell*, 445 U.S. 535, 538 (1980).  The power to waive that immunity belongs to Congress, *see Dept. of Agric. Rural Dev. Rural Hous. Serv. v. Kirtz*, 601 U.S. 42, 48 (2024), and the waiver "must be unequivocally expressed in statutory text."  *Lane v. Pena*, 518 U.S. 187, 192 (1996).  "Absent a waiver, sovereign immunity shields the Federal Government" from suit.  *Meyer*, 510 U.S. at 475.

The ATS includes no waiver of sovereign immunity.  The statute provides in full that "district courts shall have original jurisdiction of any civil action by an alien for a tort only, committed in violation of the law of nations or a treaty of the United States."  28 U.S.C. § 1350.  Courts interpreting it have squarely held that the "ATS does not waive sovereign immunity," and that a party asserting jurisdiction under the ATS against the United States "must establish, independent of that statute, that the United States has consented to suit."  *Quintero Perez v. United States*, 8 F.4th 1095, 1100, 1101 (9th Cir. 2021).  "The D.C., Second, and Fourth Circuits are in accord."  *Id.* (collecting cases).

Recognizing this jurisdictional shortcoming, Plaintiffs rely on the SAA as the waiver of sovereign immunity to assert both the DOHSA claims and their ATS claims.  *See* Doc. No. 1 ¶ 15.  But, in so doing, they must accept that this waiver is limited to bringing "a civil action in

24

admiralty" against the United States, 46 U.S.C. § 30903, and such a maritime "remedy . . . shall be *exclusive* of *any other* action arising out of the same subject matter" against the United States. *Id*. § 30904 (emphasis added).

Here, the admiralty law that applies is DOHSA, not a private right of action under the ATS that Plaintiffs ask the Court to imply into the common law.  In DOHSA, Congress authorized a cause of action "[w]hen the death of an individual is caused by [a] wrongful act, neglect, or default occurring on the high seas beyond 3 nautical miles from the shore of the United States."  46 U.S.C. § 30302.  This 1920 law, passed after the Titanic disaster, provided a means of relief for deaths on the high seas where none existed before.  *See Yamaha Motor Corp. v. Calhoun*, 516 U.S. 199, 206 (1996) (noting that under *The Harrisburg*, 119 U.S. 199, 213–14 (1886), "the general maritime law (a species of judge-made federal common law) did not afford a cause of action for wrongful death").  DOHSA reflected "Congress's considered judgment" as to the relief available for wrongful deaths on the high seas.  *Mobil Oil Corp. v. Higginbotham*, 436 U.S. 618, 625 (1978).

Referring to the "comprehensive scope of DOHSA," the Supreme Court has held that "Congress provided the exclusive recovery for deaths that occur on the high seas." *Dooley*, 524 U.S. at 123–24.  The Supreme Court has found that DOHSA's exclusivity provision precludes other remedies arising out of deaths on the high seas such as general maritime law survival actions for pre-death pain and suffering, *see id.* at 123–24; state wrongful death statutes, *see Offshore Logistics, Inc. v. Tallentire*, 477 U.S. 207, 232 (1986); and wrongful death claims based on the general maritime law, *see Higginbotham*, 436 U.S. at 623–25.[14]

_____

[14] *See also, e.g.*, *In re Lion Air Flight JT 610 Crash*, 110 F.4th 1007, 1012–13 (7th Cir. 2024) ("DOHSA preempts all survivor actions grounded in state law or general maritime law that are based on the same facts[.]"); *Jacobs v. N. King Shipping Co.*, 180 F.3d 713, 717 (5th Cir. 1999)

Holding that DOHSA displaced a general maritime claim for wrongful death on the high seas, the Supreme Court declared: "There is a basic difference between filling a gap left by Congress's silence and rewriting rules that Congress has affirmatively and specifically enacted . . . . [W]e have no authority to substitute our views for those expressed by Congress in a duly enacted statute." *Higginbotham*, 436 U.S. at 625–26; *see also Calhoun*, 516 U.S. at 215 ("When Congress has prescribed a comprehensive tort recovery regime to be uniformly applied, there is . . . no cause for enlargement of the damages statutorily provided."). So too here. These precedents spell the end of Plaintiffs' ATS claims.

Lower courts have faithfully recognized DOHSA's preclusive effect across a variety of factual contexts. In *Rux v. Republic of Sudan*, a case Plaintiffs invoke to demonstrate their allegations fall within the meaning of DOHSA, Doc. No. 1 ¶ 10, the court held that allegations of terrorism made "against a foreign state sponsor of terrorism, do[] not overcome the fact that DOHSA is an exclusive remedy." 495 F. Supp. 2d 541, 564 (E.D. Va. 2007); *see also id.* at 563 (precluding plaintiff from asserting claims under the Foreign Sovereign Immunities Act, general maritime law, and state law).

Plaintiffs may try to justify their ATS claims by relying on dicta in the Ninth Circuit's decision in *Bowoto v. Chevron Corp.*, 621 F.3d 1116 (9th Cir. 2010), a case that arose out of a "violent episode" on an oil platform off the coast of Nigeria where protestors on the platform were injured and killed by the Nigerian Government Security Forces. *See id.* at 1120. Injured protesters and the families of a protester killed on the platform sought damages under the ATS, Nigerian law, and California law. *See id.* at 1121. The issue of "first impression" presented in

---

(holding that courts cannot supplement DOHSA remedy by general maritime law or state survival acts); *Boozer v. Bell Textron, Inc.*, No. 2:25-cv-4522, 2026 WL 945706, at *4 (E.D. Pa. Apr. 7, 2026) (DOHSA preempts state suits for V-22 Osprey crash off the coast of Japan).

26

that case was "whether plaintiffs can bring claims both under DOHSA and the ATS for the alleged summary execution of" a plaintiff's decedent and for pre-death pain and suffering (that is, a survival action). *Bowoto v. Chevron Corp.*, 557 F. Supp. 2d 1080, 1087 (N.D. Cal. 2008). Relying on the same Supreme Court precedent referenced above, the district court found that "the same logic" in those cases precluding remedies other than DOHSA "applies to federal common law, regardless [of] whether the claims are maritime in nature or not." *Id.* at 1088. Accordingly, the district court held that the claim for the decedent's death "must be treated as a DOHSA, not an ATS, claim." *Id.*

On appeal, the Ninth Circuit affirmed the district court's judgment but distinguished between the ATS survival claims and the ATS wrongful death claim, affirming the latter on different grounds. *See Bowoto*, 621 F.3d at 1122–26. Holding that DOHSA displaces any ATS survival action, the Ninth Circuit noted that there was "no evidence that Congress intended ATS survival claims to remain viable after the passage of DOHSA" given the latter's "comprehensive scope" and the former's status as a "jurisdictional statute creating no new causes of action." *Id.* at 1125. The Ninth Circuit also found no congressional intent for DOHSA and the ATS to "work together," as they were enacted "more than a century apart." *Id.* The court, however, distinguished the wrongful death claim from the survival claim and seized on and improperly broadened one caveated phrase in *Higginbotham*, where the Supreme Court noted that DOHSA "does not address every issue of wrongful death law." *Bowoto*, 621 F.3d at 1124 (quoting *Higginbotham*, 436 U.S. at 625). That phrase was limited to the *Higginbotham* Court's observation that "DOHSA offered no guidance" on the picayune issue of whether a decedent's survivors could bring an action under general maritime law when the decedent had sued and recovered damages before dying, *Higginbotham*, 436 U.S. at 622 n.15. Ignoring the narrow

27

factual hypothetical posited in *Higginbotham*, the Ninth Circuit wrongly concluded that this caveated language opened "the possibility of there . . . being a cognizable ATS claim invoking principles of international law to recover for a death at sea." *Bowoto*, 621 F.3d at 1124.

*Bowoto* is both incorrect and not binding in this circuit. The rationale and sweeping language of the Supreme Court's decisions in *Higginbotham*, *Tallentire*, and *Dooley* foreclose remedies other than DOHSA for the same incident, as the Northern District of California found, *Bowoto*, 557 F. Supp. 2d at 1086–88, and as even the Ninth Circuit found regarding survival actions for deaths on the high seas. *See Bowoto*, 621 F.3d at 1124–26 ("*Dooley* thus held that DOHSA preempts all survival claims for deaths on the high seas unless there is clear indication that Congress intended otherwise.").

Because DOHSA is the exclusive remedy for wrongful death on the high seas, Plaintiffs' ATS count must be dismissed.

## 2. *The Court Should Decline to Create a New ATS Cause of Action.*

This Court should decline to create a new ATS cause of action by foreign plaintiffs against the United States based on U.S. military operations, as Plaintiffs ask the Court to do here. In *Sosa v. Alvarez-Machain*, 542 U.S. 692 (2004), a case involving an ATS claim arising out of the abduction of a Mexican national, the Supreme Court unanimously concluded that the 1789 Congress likely understood that the ATS would "furnish jurisdiction" for up to three "actions alleging violations of the law of nations": "offenses against ambassadors," "probably" "violations of safe conduct," and "may[be]" "actions arising out of prize captures and piracy." *Sosa*, 542 U.S. at 720; *see also id.* at 715. The *Sosa* majority concluded that, while courts must proceed with "great caution," *id.* at 728, their "judicial power should be exercised on the understanding that the door is still ajar" to the "recognition of . . . international norms" that are

28

"actionable" under the ATS, "subject to vigilant doorkeeping."  *Id.* at 729; *see id.* at 728–31 & n.19.[15]

To the extent that power exists, the Court cautioned in *Sosa* that it must be exercised with "great caution."  542 U.S. at 725–28.  And the Court has made clear that "courts must refrain from creating" a cause of action "if there are sound reasons to think Congress might doubt the efficacy or necessity" of doing so.  *Jesner v. Arab Bank, LLC*, 584 U.S. 241, 264 (2018) (plurality opinion) (citation modified); *Nestlé USA, Inc. v. Doe*, 593 U.S. 628, 635 (2021) (plurality opinion) ("[O]ur precedents since *Sosa* have clarified that courts must refrain from creating a cause of action whenever there is even a single sound reason to defer to Congress.").

The Court has thus declined to "extend ATS liability" previously, noting that the foreign policy and separation-of-powers concerns involved in creating new ATS claims are better left to the Legislative Branch, rather than the Judicial Branch, which has the better "institutional

---

[15] Separately, in an opinion concurring in part and concurring in the judgment, Justice Scalia concluded that, since *Erie R.R. Co. v. Tompkins*, 304 U.S. 64 (1938), federal courts' common-law powers have been insufficient to authorize "the creation of private federal causes of action for violations of customary international law."  *Sosa*, 542 U.S. at 747 (Scalia, J., concurring in part and concurring in the judgment).  As the United States has recently explained in a pending case, intervening developments in the Supreme Court's jurisprudence support Justice Scalia's original conclusion and have repudiated *Sosa*'s conclusion that lower courts retain common-law power to recognize new ATS causes of action that were unknown in 1789.  *See* U.S. Amicus Br. 13-18, *Cisco Sys., Inc. v. Does*, No. 24-856 (S. Ct.) (filed Feb. 25, 2026) (U.S. *Cisco* Br.).  The Supreme Court has explained in its post-*Sosa* cases that, in "light of the foreign-policy and separation-of-powers concerns inherent in ATS litigation, there is an argument that a proper application of *Sosa* would preclude courts from *ever* recognizing any new causes of action under the ATS."  *Jesner v. Arab Bank, PLC*, 584 U.S. 241, 265 (2018) (plurality opinion) (emphasis added).  Accordingly, the United States has asked the Supreme Court to recognize that intervening developments have superseded *Sosa*'s reasoning about the potential availability of new ATS suits and have rendered this aspect of *Sosa* "'moribund.'"  U.S. *Cisco* Br. 17-18 (quoting *Edwards v. Vannoy*, 593 U.S. 255, 274 (2021)).  Should the Supreme Court so rule, there is no question that this Court must dismiss plaintiffs' ATS claim, which is not based on one of the "three specific offenses against the law of nations" identified in *Sosa*.  542 U.S. at 715.

capacity to weigh" those concerns.  *Jesner*, 584 U.S. at 264, 65.[16]  In post-*Sosa* decisions, the Supreme Court has repeatedly yoked the creation of new ATS causes of action to the creation of new judicially inferred suits under *Bivens v. Six Unknown Named Agents of Federal Bureau of Narcotics*, 403 U.S. 388 (1971), by prescribing this same test for judicially inferred rights of action in both contexts.  *See, e.g.*, *Jesner*, 584 U.S. at 264; *Ziglar*, 582 U.S. at 136.  In applying *Bivens*, the Supreme Court has rejected every call to extend that precedent for the last 45 years. *See Goldey v. Fields*, 606 U.S. 942, 945 (2025) (per curiam).  Similarly, as a plurality of the Supreme Court observed in *Nestlé USA, Inc.*, it is telling that the Court has "never created a cause of action under the ATS" in the almost 250 years of its existence.  593 U.S. at 635 (plurality opinion).

Given this judicial history, this Court should decline to fashion an ATS cause of action here.  Even assuming courts retain some "residual common law discretion" to imply new private rights of action under the ATS beyond the three offenses *Sosa* identified, 542 U.S. at 729, this Court should not create a new maritime cause of action against the United States under the ATS. *Sosa* determined that, at a minimum, federal courts should "not recognize private claims under federal common law for violations of any international law norm," unless (1) that norm is "'specific, universal, and obligatory,'" *id.* at 732, and (2) recognizing a federal common-law cause of action for a violation of that norm is an "appropriate . . . exercise" of judicial discretion.

---

[16] *See also Ziglar v. Abbasi*, 582 U.S. 120, 136 (2017) ("In most instances, the Court's precedents now instruct, the Legislature is in the better position to consider if 'the public interest would be served' by imposing a 'new substantive legal liability.'"); *Kiobel v. Royal Dutch Petroleum Co.*, 569 U.S. 108, 116 (2013) ("[T]he danger of unwarranted judicial interference in the conduct of foreign policy is magnified in the context of the ATS."); *Sosa*, 542 U.S. at 727 ("[T]he potential [foreign policy] implications . . . of recognizing . . . causes [of action under the ATS] should make courts particularly wary of impinging on the discretion of the Legislative and Executive Branches in managing foreign affairs.").

*Id.* at 738; *see id.* at 725–26, 732–33. This test is "demanding by design" and the second step is "extraordinarily strict" because the "judicial creation of a cause of action is an extraordinary act." *Nestlé USA, Inc.*, 593 U.S. at 636–37 (plurality opinion).

Even if Plaintiffs could satisfy *Sosa*'s first step, they cannot satisfy its second, because creating a cause of action against the United States for extrajudicial killing under the ATS would exceed judicial authority to fashion domestic remedies under federal common law. Congress made the decision over 100 years ago to create a tort regime to compensate those who are wrongfully killed on the high seas, including by the United States, *see* 46 U.S.C. §§ 30302, 30903. DOHSA compensates the beneficiaries of those wrongfully killed on the high seas in the manner and extent chosen by Congress. *See id.* § 30303. Congress has spoken directly to this topic, a very "sound reason[] to think Congress might doubt the efficacy or necessity of a damages remedy" plaintiffs ask this Court to create under the ATS. *Jesner*, 584 U.S. at 264 (quoting *Abbasi*, 582 U.S. at 137). This Court thus "must refrain from creating the remedy in order to respect the role of Congress." *Id.* Instead, this Court should "defer to Congress" and decline to imply—for the first time—a cause of action against the United States under the ATS. *See Nestlé USA, Inc.*, 593 U.S. at 635 (plurality opinion). This alone dooms Plaintiffs' ATS claims.

Further, Congress has already exercised its legislative judgment by creating a cause of action for extrajudicial killings by specific plaintiffs against specific defendants. "[T]he logical place to look for a statutory analogy to an ATS common-law action is the [Torture Victim Protection Act]—the only cause of action under the ATS created by Congress." *Jesner*, 584 U.S. at 265 (plurality opinion).[17] In that 1992 enactment, Congress established a civil cause of action

---

[17] *See also* U.S. Const. art I, § 8, cl. 10 (finding that Congress has the power to "define and

that would render liable for damages an "individual who, under actual or apparent authority, or color of law, *of a foreign nation . . .* subjects an individual to extrajudicial killing." Pub. L. No. 102-256, 106 Stat. 73 (codified at 28 U.S.C. § 1350 note) (emphasis added). "Congress took care to delineate the TVPA's boundaries," *Jesner*, 584 U.S. at 265 (plurality opinion), and "decide[d] to create a cause of action against one category of defendants but not another." *Nestlé USA, Inc.*, 593 U.S. at 639 (plurality opinion). "Each of these decisions carries with it significant foreign policy implications." *Kiobel*, 569 U.S. at 117.

In determining that only individuals acting "under actual or apparent authority, or color of law, of a foreign nation," 28 U.S.C. § 1350 note, Congress chose *not* to authorize actions against individuals acting on behalf of the United States. This legislative judgment "demonstrates that there are two [or more] reasonable choices," *Jesner*, 584 U.S. at 268 (plurality opinion), when prescribing the scope of civil liability for extrajudicial killings. Had Congress intended to expand the scope of liability and take the unprecedented step of making individuals acting on behalf of the United States liable for damages under these circumstances, it would have done so expressly. It did not. Given that the "TVPA reflects Congress's considered judgment of the proper structure for a right of action under the ATS," "courts should not deviate from that model" "[a]bsent a compelling justification." *Jesner*, 584 U.S. at 266 (plurality opinion); *see also Hernandez v. Mesa*, 589 U.S. 93, 109 (2020) (declining to extend *Bivens* remedy where Congress had chosen not to do so in a closely related statute).

For all these reasons, this Court should dismiss Plaintiffs' ATS count under Rule 12(b)(6).

---

punish . . . Offences against the Law of Nations").

32

## V.    CONCLUSION

For the reasons set forth above, the United States respectfully requests that the Court grant the United States' motion to dismiss the Complaint.

Dated:  June 5, 2026

Respectfully submitted,

LEAH BELAIRE FOLEY
United States Attorney

BRETT A. SHUMATE
Assistant Attorney General
Civil Division

JONATHAN D. GUYNN
Deputy Assistant Attorney General
Torts Branch, Civil Division

RODNEY PATTON
Director
Aviation, Space & Admiralty Litigation

MICHAEL A. DILAURO
Assistant Director, Admiralty

/s/ *Richard Ingebretsen*
RICHARD G. INGEBRETSEN (DC Bar
No. 1736200)
Trial Attorney
United States Department of Justice
Civil Division, Torts Branch
Aviation, Space & Admiralty Litigation
P.O. Box 14271
Washington, D.C. 20044-4271

Attorneys for the United States

33

## CERTIFICATE OF SERVICE

I certify that this document filed through the ECF system will be sent electronically to the registered participants as identified on the Notice of Electronic Filing (NEF) and paper copies will be sent to those indicated as non-registered participants.

/s/ *Richard Ingebretsen*
RICHARD G. INGEBRETSEN (DC Bar No. 1736200)
Trial Attorney
United States Department of Justice